JOHNSON, Special Administratrix, Respondent, vs. VIEBROCK and others, Appellants.

*February 3—March 3, 1953.*

For the appellants there was a brief by *William A. Cameron* and *Howard W. Cameron,* both of Rice Lake, and oral argument by *William A. Cameron.*

For the respondent there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *John Doar* and *W. T. Doar, Jr.*

FRITZ, C. J.   The accident, which caused the death of Kenneth Morris Johnson, happened about 4 o'clock p. m. on May 22, 1951, on County Trunk Highway C, which runs north and south in St. Croix county. The day was clear and there was nothing to interfere with vision. Along the place of the accident, the highway was straight with a black-top surface, which was 20 feet in width, and directly west of the center gate of a cemetery, that was 20 feet east of the highway. There was no marked crosswalk or roadway excepting the private driveway leading into the cemetery. To the south of the place of the accident, there was a slight uphill grade, the crest of which was about 1,000 feet south of the cemetery.

On the truck, which Viebrock was driving northward at about 45 miles per hour, there was a refrigerated van weighing about 11,000 pounds. Viebrock testified that when he was about at the crest of the uphill grade, or shortly thereafter, he noticed that a truck, which belonged to Alfred Asp, an interpleaded defendant, was parked on the west side of the highway, facing south, about one half on and one

half off the black-top roadway. As Viebrock was proceeding northward, he saw Johnson standing at the left front fender of Asp's truck. When Viebrock was approximately 400 or 500 feet away, he sounded his horn at least three loud blasts; and upon sounding that warning, Johnson turned his head and looked toward defendant's truck. Viebrock testified that upon observing Johnson, he put his foot on the brake so as not to gather speed as he came down the hill; and he pulled the truck slightly to the right so that its right wheels were approximately on the east edge of the black-top; and that when the truck was between 35 and 40 feet away from Johnson, he was standing in the center of the roadway, and at the time he took one or two steps back to the northeast and ran diagonally across the highway in front of the approaching truck; and that observing Johnson, Viebrock applied his brakes very hard, so that they skidded and dug up the dirt in such a manner that the tracks were visible in a rough spot on the east edge of the black-top; and this action of brakes caused the truck to go a few inches farther to the right, or east. The point of impact between defendant's truck and Johnson was about 20 feet north of the Asp truck, near which Johnson was standing before he began to cross the roadway. He was struck by the right front fender and headlight of the defendant's truck, and sustained injuries which shortly afterward resulted in his death.

John L. Peterson, the cemetery sexton, testified that he did not know for sure how far away the defendant's truck was from Johnson at the time he started to cross the road, but that he would say it was about 30 feet; that he could not tell exactly Johnson's position at the time he started across, but he thought he was about in the center of the road; that at the time Peterson first saw the defendant's truck, it was about 40 to 50 feet away from Johnson; and that he saw Johnson start to run and at the time he was struck, he was pretty nearly across, and Peterson thought that Johnson was

going to make it. Asp, who was seated in his parked truck, did not see the accident, but it is undisputed that he called to Johnson, "Hey, look out, there comes a truck."

Plaintiff relies largely upon the testimony of Chester Sutliff, who was driving southward on Highway C. Sutliff testified that when he was north of Asp's truck, which he saw parked on the west half of the black-top roadway, and was approaching defendant's truck coming toward him, he heard Viebrock's warning signal, and saw Johnson look toward the south; that Johnson was standing on the highway facing east and about four feet from the west edge of the black-top, in front of, and about one foot east of the left front fender of Asp's truck. Sutliff testified that when Johnson was in that position, the truck operated by Viebrock had not come over the hill to the south; that Johnson then started to walk diagonally across the remaining 15–16 feet of the roadway to the east; that he walked three or four steps and got just past the center of the roadway, when Viebrock sounded the horn about 300 or 400 feet from Johnson; and that he, without stopping, took five or six running steps before the right fender of the Viebrock truck hit Johnson. Sutliff testified that the truck was straddling the black-top and gravel when it hit Johnson who was, at the time of the impact, just off the black-top on the east shoulder; that the truck was observed braking its speed when it was half way down the hill; that no skid marks were found on the highway after the accident, to indicate that the brakes had been applied hard, and the only marks visible from the truck were the marks on the shoulder of the road in a soft spot in the gravel. After hitting Johnson, the truck continued northward down the road about 180 feet, about half on and half off the roadway; and Johnson was hurled 10 to 12 feet east of the black-top to the grass alongside the cemetery fence.

Although there are conflicts in the evidence in several material respects, upon our review of the entire record, it is

our conclusion that there is sufficient credible evidence to sustain the jury's findings to the following effect: That at, or immediately prior to the time of the collision, Russell Viebrock was negligent as to the manner in which he managed and controlled the truck which he was operating; and that such negligence was a proximate cause of the collision and the resulting injury and death of Johnson; that prior to the time of the collision, and immediately at the time of the collision, Kenneth Morris Johnson was negligent in the manner in which he crossed the roadway, and in failing to yield the right of way to the approaching truck; and that such negligence was a proximate cause of the collision and the resulting injury and death of Johnson; that 90 per cent of the total causal negligence was attributable to Viebrock, and 10 per cent of said causal negligence was attributable to Johnson.

Appellant's principal contention is that the negligence of Johnson was, as a matter of law, at least as great, or greater than that of Viebrock, and therefore the jury's finding attributing 90 per cent of the negligence to Viebrock and only 10 per cent to Johnson cannot stand. This issue is determined against appellants by the decision in *Grohusky v. Ferry,* 251 Wis. 569, 30 N. W. (2d) 205. That case, as does the case at bar, involved the striking of a pedestrian as he was crossing a country highway by a motor vehicle, and the testimony was in conflict as to whether the pedestrian started to cross the highway when the vehicle was only 50 feet distant from him, or whether such distance was 200 feet. The jury attributed 25 per cent of the total causal negligence to the plaintiff. The court stated (p. 572):

"The jury therefore could conclude that defendant's car was 200 feet away when plaintiff started to cross and that the accident occurred either because defendant did not see plaintiff in time to take steps to avoid the accident, or because if he did see him in time, defendant thereafter mismanaged his car. . . .

"It is clear that the jury was entitled to find that this was not a situation where plaintiff stepped into the path of defendant at a time when by the exercise of ordinary care defendant could do nothing to avoid the accident. . . .

"It is next contended that plaintiff's negligence is equal to or greater than that of defendant as a matter of·law. This contention must be rejected. While plaintiff may have been negligent in respect of yielding the right of way the jury could find that his judgment as to the prospects of crossing the road without obstructing defendant's passage was not far off since he not only cleared the right-hand path but nearly cleared the concrete roadway before he was hit. Under the circumstances we cannot disturb the jury's finding that he was less negligent than defendant."

In the instant case, we would have been better satisfied if the jury, in making its comparison of negligence, had attributed a higher percentage of negligence than 10 per cent to Johnson. If the trial court had been of the opinion that the finding of only 10 per cent of the total causal negligence was attributable to Johnson, was against the greater weight of the evidence, the trial court could have granted a new trial in the interests of justice on such ground. However, the trial court failed to exercise such discretionary right, and the granting of a new trial on such ground is peculiarly within the discretion of the trial court.

*By the Court.*—Judgment affirmed.